IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| WALT RUFFIN | ) |
| | ) |
| v. | ) NO. 3:04-0059 |
| | ) JUDGE CAMPBELL |
| GERALD F. NICELY, et al. | ) |

MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 68). For the reasons stated herein, Defendants' Motion is GRANTED.

INTRODUCTION

Before the Court can consider Defendants' Motion for Summary Judgment, it must determine which of Plaintiff's claims remain in this action. Plaintiff originally filed suit against eleven Defendants, including the State of Tennessee, Tennessee State University, and nine individuals in both their official and individual capacities. Docket No. 1. After discovery, the parties filed a Joint Stipulation of Dismissal as to Defendants Nicely, Pearson, Battle, Robinson, Ferreira and Dye in their individual capacities. Docket No. 61.

As a result of this Court's ruling on Defendants' Motion to Dismiss (Docket No. 31) and the ruling of the Sixth Circuit Court of Appeals thereon (Docket No. 35), Plaintiff's due process claims and First Amendment claims for retroactive relief have been dismissed. In addition, any claims for money damages against the State of Tennessee, and the individual Defendants in their official capacities have been dismissed. Docket No. 31.[1] For purposes of this Memorandum, the Court will

---

[1] The State and its officials in their official capacities may be liable for prospective, injunctive relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, n.10 (1989).

refer to Defendants Tennessee Department of Transportation ("TDOT"), Tennessee State University ("TSU"), and the individual Defendants in their official capacities as "the State of Tennessee."

In response to the Court's Order (Docket No. 90), Plaintiff asserts that his remaining claims are (1) race discrimination claims, pursuant to 42 U.S.C. § 2000d ("Title VI"), against the State of Tennessee; (2) retaliation claims, pursuant to Title VI, against the State of Tennessee and Defendants Luter, Latham and Ordung in their individual capacities; and (3) race discrimination claims, pursuant to 42 U.S.C. § 1981, against the State of Tennessee and Defendants Latham and Ordung in their individual capacities. Docket No. 91, p. 3.

Yet, on page 4 of Plaintiff's Supplemental Brief, he asserts that he should also recover (1) money damages from Defendants Luter, Latham and Ordung for retaliation in violation of 42 U.S.C. § 1981; (2) money damages from Defendants Luter, Latham and Ordung for violation of his First Amendment rights, pursuant to 42 U.S.C. § 1983; and (3) money damages from Defendants Luter, Latham and Ordung for conspiracy to deprive him of his constitutional rights pursuant to 42 U.S.C. § 1985.

Further, on pages 5 and 6 of Plaintiff's Supplemental Brief, Plaintiff asserts that he also seeks injunctive relief against all Defendants to prohibit them from engaging in any further unlawful practices, policies, customs, usages, discrimination and retaliation, and that he seeks prospective relief, undefined, from the State of Tennessee for First Amendment violations. Docket No. 91.

Defendants' Response to Plaintiff's Supplemental Brief argues that there is no remaining claim for money damages pursuant to 42 U.S.C. § 1983 and there are no remaining claims for retaliation pursuant to Title VI or 42 U.S.C. § 1981, since Plaintiff's retaliation claims were based upon his First Amendment rights, not race. Docket No. 92.

2

Thus, as the Court suspected, the parties do not agree as to the scope of Plaintiff's remaining claims. This Court finds that, in light of its prior ruling (Docket No. 31), the ruling of the Sixth Circuit Court of Appeals (Docket No. 35) and the Joint Stipulation of Dismissal (Docket No. 61), the following claims remain for consideration:

(1) Plaintiff's claims for race discrimination and retaliation[2] in violation of Title VI against all Defendants; (2) Plaintiff's claims for race discrimination and retaliation in violation of 42 U.S.C. § 1981 against all Defendants; and (3) Plaintiff's claim for prospective relief for violation of his First Amendment rights against the State of Tennessee.[3] Plaintiff seeks injunctive relief against the State of Tennessee and money damages from individual Defendants Luter, Latham and Ordung.

## FACTS

Plaintiff is an African-American citizen who does business as Ruffin and Company, P.C., a certified public accounting business. Docket No. 81, ¶ 3. Defendant TDOT receives federal funding for a program to provide managerial, technical and educational supportive services to disadvantaged business entities. Id., ¶ 1. For several years prior to 2002, TDOT had contracted with the University of Tennessee ("UT") to provide these support services. Id., ¶ 2. During those years,

---

[2] Although Plaintiff's Complaint (Docket No. 1) does not allege retaliation in the two counts based upon Title VI and 42 U.S.C. § 1981, Plaintiff does allege retaliation in violation of these two statutes in his prayer for relief and also in his Response to Defendants' Motion for Summary Judgment (Docket No. 80). Both this Court and the Sixth Circuit Court of Appeals previously addressed Plaintiff's retaliation claim solely as a state law claim based upon Count Five of the Complaint.

[3] Plaintiff's claims for money damages for violation of the First Amendment cannot be considered under the Sixth Circuit's opinion which affirms this Court's dismissal of First Amendment claims for retroactive relief. Docket No. 35.

3

UT, in turn, contracted with Plaintiff to provide accounting consulting services for these disadvantaged businesses. Id., ¶ 4.

Before its contract with UT expired, TDOT began the process of drafting a Request for Proposal ("RFP") to solicit proposals from individuals and entities to provide supportive services for disadvantaged businesses. Id., ¶ 6. Over the course of several months, several draft RFPs were prepared and submitted for approval. Id., ¶ 7. Each of the drafts was rejected and, as a result, TDOT decided to procure the supportive services via a grant to another state agency. Id., ¶ 8. In the spring of 2003, TDOT approached the Director of the Tennessee Small Business Development Center ("TSBDC") at TSU and inquired whether TSBDC would be interested in providing supportive services to disadvantaged businesses. Id., ¶ 11. TSBDC subsequently submitted a proposal to TDOT to provide the supportive services. Id., ¶ 12. TDOT accepted TSBDC's proposal and issued a grant to TSBDC. Id., ¶ 13. After the grant was issued, TSBDC began work on procuring qualified companies to perform the engineering and financial consulting services contemplated by the grant. Id., ¶ 14.

After determining that rules and regulations of the Tennessee Board of Regents require that the contract be competitively bid, TSBDC contacted TSU's purchasing office to facilitate an RFP for accounting consulting services. Id,, ¶¶ 16-17. On September 8, 2003, TSBDC issued RFP 10019 for accounting services in order to offer the supportive services contemplated by the TDOT grant. Id., ¶ 18. On September 18, 2003, Plaintiff submitted a proposal in response to RFP 10019. Id.,¶ 20. Three other companies also submitted proposals in response to RFP 10019. Id., ¶ 21.

Upon recommendation of an evaluation committee, TSU sent notice to all proposers of its intent to award RFP 10019 to Crowe Chizek and Company LLC. Id., ¶¶ 23-24. No contract,

4

however, was ever prepared or executed. Id., ¶ 25. Plaintiff thereafter faxed and mailed a letter to the Director of TSU's purchasing office, protesting the award of RFP 10019 to Crowe Chizek and Company LLC and requesting a review of all submitted proposals and their evaluations for RFP 10019. Id., ¶ 28. Two other companies also filed complaints with TSU about the proposed award of RFP 10019. Id., ¶ 29.

On January 15, 2004, TSU's purchasing office rescinded the December 22, 2003 letter of notification of award, canceled RFP 10019 in its entirety, and notified all proposers that RFP 10019 would be re-advertised. Id., ¶ 37. Thus, no contract was ever awarded pursuant to RFP 10019. TSU's purchasing office then re-advertised a modified RFP 10019 as RFP 10078. Id., ¶ 38.

On March 19, 2004, Plaintiff was selected as one of the successful bidders on RFP 10078 and entered into a contract with TSU to provide 650 hours of counseling to disadvantaged businesses. Docket No. 81, ¶ 39. Thereafter, Plaintiff was selected by the Defendants to perform an additional 974.75 hours worth of counseling. Id., ¶ 40.

On January 22, 2004, Plaintiff filed this action, alleging race discrimination, retaliation, violation of First Amendment and due process rights, and conspiracy to violate constitutional rights. Docket No. 1.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence

5

and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

TITLE VI and SECTION 1981: RACE DISCRIMINATION

Title VI of the United States Code, provides, in pertinent part:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.[4]

42 U.S.C. § 2000d. The Supreme Court has recognized an implied private cause of action to enforce Title VI. See Alexander v. Choate, 469 U.S. 287, 293-94 (1985).[5]

To state a claim for damages under Title VI, Plaintiff must show that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal assistance. Grimes v. Superior Home Health Care, 929 F.Supp. 1088, 1092 (M.D. Tenn. 1996).

Section 1981 provides that all persons within the United States shall have the same right to make and enforce contracts as is enjoyed by white citizens. 42 U.S.C. § 1981(a). The term "make

---

[4] It is undisputed that the programs at issue receive federal funding.

[5] To the extent Plaintiff attempts to bring a Title VI claim against the individual Defendants, those claims are dismissed because the proper defendant in a Title VI case is an entity rather than an individual. Farm Labor Organizing Comm. v. Ohio State Highway Patrol, 95 F.Supp. 2d 723, 741 (N.D. Ohio 2000) (citing Buchanan v. City of Bolivar, Tenn., 99 F.3d 1352, 1356 (6th Cir. 1996)).

6

and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

To establish a prima facie claim under Section 1981, Plaintiff must present evidence with respect to the following elements: (1) he is a member of a protected class; (2) he attempted to contract for certain services; (3) he was denied the right to contract for those services; and (4) such services remained available to similarly situated persons outside the protected class. Wells v. Burger King Corp., 40 F.Supp.2d 1366, 1368 (N.D. Fla. 1998). Courts have repeatedly held that where a plaintiff is not deprived of the right to make and enforce a contract, there is no violation of Section 1981. White v. Denny's, Inc., 918 F.Supp. 1418, 1424-25 (D. Col. 1996). Under either of these statutes, therefore, Plaintiff must establish that he was denied the right to contract with Defendants because of his race.

Defendants first argue that Plaintiff has no standing to bring this lawsuit because the corporation, Ruffin and Company, PC, not Plaintiff individually, is the entity which submitted a proposal for this contract. The Court finds that Plaintiff sufficiently identified both himself and his corporation as Plaintiffs in this action, from the beginning (Docket No. 1), and this argument has no merit.

Plaintiff's claims revolve around two actions: award of the sole source TDOT grant to TSBDC and the proposed award of the TSBDC subcontract to Crowe Chizek and Company. As noted above, the TDOT grant to TSBDC was never offered by RFP to *any* company.[6] TDOT made

---

[6] Plaintiff has admitted that TDOT's abandonment of the RFP procedure for this job eliminated other potential bidders as well. Plaintiff's Deposition (attached to Docket No. 76), p. 93.

7

the decision to award a sole source grant to TSU's Small Business Development Center, without putting out RFPs to the public. There is no evidence that that decision was based upon anything about the Plaintiff, specifically not his race. In fact, Plaintiff has admitted that he is not complaining that race was a factor in TDOT's switching from the RFP procedure to a sole source grant. Plaintiff's Deposition, pp. 10 and 91.

Therefore, to the extent Plaintiff has claims against Defendants TDOT, Nicely, Pearson and Luter for race discrimination in violation of Title VI and Section 1981, Defendants' Motion for Summary Judgment on those claims is GRANTED, and those claims are DISMISSED.

Plaintiff also claims that Defendants TSU, Latham and Ordung awarded RFP 10019 in a racially discriminatory manner. Yet, RFP 10019 was never awarded. As indicated above, TSU notified those who submitted proposals that it intended to award the contract to Crowe Chizek, but no contract was ever awarded, signed or executed. In other words, the wrong Plaintiff complains of never occurred. There was no adverse action actually taken against Plaintiff, especially considering the fact that Plaintiff ultimately was awarded the contract. Plaintiff was not denied the right to contract with TSU.

The Court finds that Plaintiff has failed to carry his burden of establishing his claims for race discrimination against TSU, Latham and Ordung with regard to the proposed award of a contract based upon RFP 10019. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's race discrimination claims against Defendants TSU, Latham and Ordung, and those claims are DISMISSED.

TITLE VI AND SECTION 1981: RETALIATION
8

Plaintiff also alleges retaliation in violation of Title VI and Section 1981. To establish retaliation under either of these statutes, Plaintiff must establish that (1) he engaged in protected activity, (2) Defendants took a material adverse action against him, and (3) a causal connection existed between the protected activity and the adverse action. Jackson v. Overton County School District, 2007 WL 173695 at # 5 (M.D. Tenn. Jan. 18, 2007) (citing Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003)); Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002). To be actionable, the retaliation must have been in response to Plaintiff's assertion of rights that were protected by these statutes. Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 693 (2d Cir.1998).

The alleged protected activity of Plaintiff includes complaints about TDOT's handling of the disadvantaged business entities' program through a letter dated February 7, 2003 (Complaint, ¶ 35); complaints about TDOT's failure to solicit proposals and find a replacement for the supportive services contract (Complaint, ¶ 36); Plaintiff's request for a compliance review of TDOT in February or March of 2003 (Docket No. 89, ¶ 3); a letter of complaint to TSU, dated December 22, 2003; and a subsequent Bid/RFP Record Review form submitted by Plaintiff on January 12, 2004 (Exs. 4 and 7 to Plaintiff's deposition (Docket No. 76)).

Plaintiff's complaints concerned alleged mismanagement, delays, and failure to follow regulations and proper procedures, not race. The Court finds that Plaintiff's alleged protected activity was not an assertion of rights protected by Title VI and Section 1981, as required for Plaintiff's retaliation claims under these statutes. In addition, the Court also finds that Plaintiff has not shown a material adverse action against him. As noted above, the contract for services at issue was ultimately awarded to Plaintiff.

9

For these reasons, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's retaliation claims under Title VI and Section 1981, and those claims are DISMISSED.

FIRST AMENDMENT: PROSPECTIVE RELIEF

The Sixth Circuit Court of Appeals reversed this Court's dismissal of Plaintiff's First Amendment claims for prospective relief.[7] Docket No. 35. Plaintiff has failed to identify what "prospective relief" he seeks for the alleged First Amendment violations. In response to the Court's Order requesting additional information, Plaintiff merely restates the basis for his claim and does not define the specific prospective relief sought. Docket No. 91, pp.5-6.

Plaintiff's Supplement Brief states that Plaintiff seeks injunctive (prospective) relief for his discrimination and retaliation claims "under 42 U.S.C. §§ 1981, 1985 and 2000d." Docket No. 91, p. 5. Section 1985 precludes conspiracy to violate constitutional rights, including First Amendment rights.[8] The injunctive relief Plaintiff seeks, however, is a permanent injunction enjoining Defendants "from engaging in any further unlawful practices, policies, customs, usages, discrimination and retaliation," Docket No. 91, p. 5, something Defendants are required to do anyway.

To establish a *prima facie* case of First Amendment retaliation, Plaintiff must demonstrate that he was engaged in constitutionally protected activity, he was subjected to an adverse action or deprived of some benefit, and his protected speech was a substantial or motivating factor in the

---

[7] This Court's dismissal of Plaintiff's claims for money damages (retroactive relief) under the First Amendment was affirmed by the Sixth Circuit. Docket No. 35.

[8] Plaintiff admits that he is not alleging conspiracy with regard to the sole source grant. Plaintiff's Deposition, pp. 86-88. The conspiracy alleged involved Defendants Latham and Ordung and concerned the RFP "award" to Crowe Chizek and Company. Id., p. 106.

10

adverse action.  Farhat v. Jopke, 370 F.3d 580, 588 (6th Cir. 2004); Bessent v. Dyersburg State Community College, 415 F.Supp. 2d 874, 877-78 (W.D. Tenn. 2006).  Plaintiff contends that "by virtue of expressing his First Amendment rights, he was denied the award of RFP No. 10019 at issue, by not only the State of Tennessee and TSU, but also Luter, Latham and Ordung individually."  Docket No. 80, p. 26.

For the reasons stated above, the Court finds that Plaintiff was *not* denied the award of RFP 10019.  That award never occurred, and Plaintiff ultimately got the contract.  Plaintiff has failed to show that Defendants subjected him to an adverse action or deprived him of some benefit in response to his protected activity.  In fact, Defendants actually *responded* to the complaints of Plaintiff and others and canceled RFP 10019, rebid it, and awarded it to Plaintiff.

As for Plaintiff's alleged claim for conspiracy to violate constitutional rights, brought pursuant to 42 U.S.C. § 1985(3) ("Section 1985"), Plaintiff must show (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property or a deprivation of any right or privilege of a citizen of the United States.  Johnson v. Hills & Dales General Hospital, 40 F.3d 837, 839 (6th Cir. 1994).  Plaintiff must also show that the conspiracy was motivated by a class-based animus.  Id.  Here, the Court has found no injury to Plaintiff or violation of Plaintiff's rights.  Therefore, Plaintiff's Section 1985 claim fails as well.

Therefore, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's First Amendment claims for prospective relief, however they may be defined, and those claims are DISMISSED.

11

CONCLUSION

For all the above reasons, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's claims are DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE